UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINN, et al., <br>       Appellants, <br>    v. <br> SVP, <br>       Appellee. | Case No. 3:20-cv-01475-WHO |
| FINN, et al., <br>       Appellants, <br>    v. <br> SVC, <br>       Appellee. | Case No. 3:20-cv-03132-WHO <br><br> **ORDER ON BANKRUPTCY APPEALS** |

These related appeals arise from the same bankruptcy proceeding and concern the same narrow issue. In two orders, the Bankruptcy Court disallowed four claims by the appellants on the basis of a settlement agreement between the parties here and others. For the reasons explained below, I affirm the Bankruptcy Court's orders.[1]

**BACKGROUND**

This Order discusses only the facts relevant to this discrete issue. The appellants in both cases are Stephen Finn and Winery Rehabilitation, LLC ("WR"). The appellees are SVP and

---

[1] Oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. FED. R. BANKR. P. 8019(b)(3).

SVC, the successors-in-interest to the Chapter 11 trustees of those entities' bankruptcy estates.

On May 17, 2012, the parties entered into two loan instruments. The first was a Loan and Security Agreement (the "Loan Agreement") under which Silicon Valley Bank would give loans to the appellees secured by liens on and security interests in their property. *See* Opening Brief ("Op. Br.") [Dkt. No. 8] Ex. A [Dkt. No. 8-2] at 5–6.[2] WR is Silicon Valley Bank's successor-in-interest on the Loan Agreement. *Id.* at 5. Under the Loan Agreement, WR claims it is "entitled to reimbursement of attorneys' fees and expenses in connection with claims asserted against [WR] arising from or relating to the Loan Agreement." *Id.* Ex. B [Dkt. No. 8-3] at 7. The second instrument, subordinated to the first, was a Subordinated Secured Grid Promissory Note (the "Grid Note"), under which Finn gave loans to the appellees secured by "all right, title and interest" to and in their assets. *Id.* Ex. C [Dkt. No. 8-4] at 10. The Grid Note provided that the appellees would reimburse its holder for "any and all costs and expenses (including, without limitation, court costs, legal expenses and reasonable attorneys' fees, whether or not suit is instituted, and, if suit is instituted whether at the trial court level, appellate level, any bankruptcy, probate or administrative proceeding or otherwise) incurred in collecting or attempting to collect on this Note." *Id.* Additionally, Finn claimed that he and SVC are parties to an agreement (the "Indemnity Agreement"), which provided that SVC would indemnify Finn against expenses incurred in defending himself for actions taken on behalf of SVC. *See* 3132 Op. Br. Ex. E [3132 Dkt. No. 7-6] at 7. Finn argues that the Indemnity Agreement would apply to his attorney fees and expenses in this proceeding and related ones discussed below. *Id.*

SVP and SVC entered bankruptcy proceedings in February 2017. *See* Case Nos. 17-10067-RLE, 17-10065-RLE. In April 2017, Finn and WR filed four claims in the bankruptcy that they now appeal (Claims 11, 12, 13, and 14, collectively the "Finn Party Claims"). Dkt. Nos. 8-2, 8-4; 3132 Dkt. Nos. 7-2, 7-4. Those claims were for the principal and interest owed on the Loan Agreement and Grid Note.

In July 2017, SVP and SVC commenced an adversary proceeding in the Bankruptcy Court

---

[2] References to the docket are to 3:20-cv-01475 unless otherwise indicated. Documents from case 3:20-cv-03132 are referenced with the identifier "3132."

(the "Adversary Proceeding") against Finn and another party. Dkt. No. 8-7. They sought, among other things, disallowance of Finn's claims (Claims 13 and 14). *Id.* In October 2017, Ross and Kelleen Sullivan ("the Sullivans"), equity holders and former debtors-in-possession of the SVP and SVC estates, *see* Op. Br. Ex. X ("Hearing Trans.") [Dkt. No. 8-24] at 18–19, brought an action in this Court against Finn and another entity (the "District Court Action"). *See* No. 3:17-cv-05799.

With the Bankruptcy Court's approval, the trustee of SVP and SVC's estates carried out a sale of the appellee's property and, in January 2018, paid Finn and WR for the principal and interest (and post-petition fees and expenses) on the Loan Agreement and Grid Note. *See* Dkt. Nos. 8-8 at 3 (authorizing sale and payments); 8-20 at 21 (finding that payment occurred).

In May 2018, the Sullivans objected to WR's claims (Claims 11 and 12). Dkt. No. 8-9. The Bankruptcy Court sustained the objection because the claims had been paid by the sale proceeds, except to the extent that WR had "a contingent claim for a possible right to recover attorneys fees, at a minimum, incurred in protecting it [sic] interests." Dkt. No. 8-12 at 3. At that point, the appellants had not claimed attorney fees or expenses.

In September 2018, Finn and WR amended their claims to include reimbursement, under the Loan Agreement, Grid Note, and Indemnity Agreement, of attorney fees and expenses in connection with litigating the bankruptcy claims, the Adversary Proceeding, and the District Court Action. Dkt. Nos. 8-3, 8-6; 3132 Dkt. Nos. 7-3, 7-6.

On May 8, 2019, the trustee applied to the Bankruptcy Court for authorization to enter into a compromise with Finn, WR, and a group of other creditors. Op. Br. Ex. N ("Compromise Application") [Dkt. No. 8-14]. Much of the Settlement Agreement concerned creditors other than Finn and WR and a related civil state court action. *See* Settlement Agreement at 22.[3] As relevant here, the trustee agreed to dismiss the Adversary Proceeding with prejudice while Finn and WR agreed to subordinate the Finn Party Claims to other debt in the proceeding. *Id.*

---

[3] The Settlement Agreement is in the record before me as part of the appellants' Exhibit N, the trustee's Compromise Application. Dkt. No. 8-14. I refer to pages 2–11 of that exhibit as the "Compromise Application" and pages 20–28 as the "Settlement Agreement."

United States District Court
Northern District of California

1     This appeal arises from a dispute over two paragraphs of the Settlement Agreement. Paragraph 2 subordinates the Finn Party Claims to other debt and also provides in relevant part that "[n]either the Finn Party Claims nor [another claim not relevant here] are being liquidated or otherwise resolved by this Agreement. Except as set forth in this Agreement, the Parties reserve all rights as to the Finn Party Claims and [the other claim]." *Id.* Paragraph 6 of the Settlement Agreement provides, "The Settling Creditors and the Trustee shall bear their own costs, expenses and attorneys' fees incurred in connection with the [state civil] Action, Adversary Proceeding, District Court Action and the Bankruptcy Cases, and the negotiation, preparation, and application for Bankruptcy Court approval of this Agreement." *Id.* The Bankruptcy Court granted the trustee's application and authorized him to enter into the Settlement Agreement. Op. Br. Ex. P ("Compromise Order") [Dkt. No. 8-16]. The Court's Compromise Order then carried out those settlement terms within its power, including the subordination of the Finn Party Claims "[c]onsistent with paragraph 2 of the Settlement Agreement." *Id.* at 3.

SVC and SVP's bankruptcy estates were eventually given separate trustees; both objected to the Finn Party Claims. Dkt. No. 8-19; 3132 Dkt. No. 7-20. Among other arguments, the trustees contended that the principal and interest due on both the Loan Agreement and the Grid Note had been paid to WR and Finn from the asset sale, leaving only attorney fees and expenses arising from the claim process, the Adversary Proceeding, and the District Court Action. Those attorney fees and expenses, the trustees argued, had been extinguished by Paragraph 6 of the Settlement Agreement. The Bankruptcy Court agreed with that interpretation of the Settlement Agreement, explaining its reasoning at length orally at a hearing on one of the motions. Hearing Trans. at 18–33. It also made clear that its Compromise Order "simply approves the terms and conditions of the Settlement Agreement. It doesn't add to or take away from anything from that agreement." *Id.* at 16. The Court entered written orders disallowing all Finn Party Claims. Dkt. No. 8-22; 3132 Dkt. No. 7-23. The appellants now appeal both Orders.

**LEGAL STANDARD**

District courts have jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a). *Educ. Credit Mgmt. Corp. v. Pope*, 308 B.R. 55, 59 (N.D. Cal. 2004). The interpretation

4

of contracts, including settlement agreements, is a question of law reviewed *de novo*. *Congregation ETZ Chaim v. City of Los Angeles*, 371 F.3d 1122, 1124 (9th Cir. 2004). Factual findings, including about extrinsic evidence, are reviewed for clear error. *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir. 2001).

## DISCUSSION

The Bankruptcy Court's Compromise Order and Orders disallowing the Finn Party Claims make clear that they interpret and approve the Settlement Agreement. *See* Compromise Order at 2 ("The Application is approved."); Hearing Trans. at 17 ("Well, let me clear about the [Compromise Order] that I entered. The order I entered with the language in it simply approves the terms and conditions of the Settlement Agreement. It doesn't add to or take away from anything from that agreement. So I want to be clear on the record that that is the order that was entered approving the Settlement Agreement."); Dkt. No. 8-22 at 1 (order is issued "for the reasons stated on the record"); 3132 Dkt. No. 7-23 (same). The parties agree that California contract law dictates interpretation of the Settlement Agreement. Op. Br. 8; Answering Brief [Dkt. No. 10] 8.

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); *see* CAL. CIV. CODE § 1636. To determine the parties' intent, California courts "look first to the language of the contract in order to ascertain its plain meaning." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014) (internal quotations and citation omitted). If the language of the contract is "clear and explicit, it governs." *Bank of the W.*, 2 Cal. 4th at 1264; *see* CAL. CIV. CODE § 1638. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." CAL. CIV. CODE § 1641. "Particular clauses of a contract are subordinate to its general intent." *Id.* § 1650. If provisions of a contract are contradictory, they must be "reconciled, if possible, by such an interpretation as will give some effect to" both provisions, always "subordinate to the general intent and purpose of the whole contract." *Id.* § 1652.

5

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." CAL. CIV. CODE § 1639. In general, if a written contract "was intended to be the complete and final expression of the parties' intent," extrinsic evidence cannot be used to interpret it. *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002). In other words, if the contracted is "fully integrated," the parol evidence rule prohibits consideration of evidence of meaning beyond the contract itself. *See id.* Extrinsic evidence can be used, however, to interpret ambiguous terms, provided they are "reasonably susceptible to the proffered meaning before parol evidence is permitted." *Id.*

## I. Integration

The Settlement Agreement contains an integration clause: "This Agreement contains the entire agreement between the Settling Creditors and the Trustee regarding its subject matter. This Agreement cannot be modified or amended, except in writing executed by the party to be charged. Except as expressly set forth herein, there have been no representations or promises made by any party and relied upon by the other in entering into this Agreement." Settlement Agreement at 24. Consequently, the parol evidence rule bars consideration of extrinsic evidence unless the contract is ambiguous.

## II. Interpretation

These appeals concern the interplay between two provisions of the Settlement Agreement. Paragraph 2 provides that the Finn Party Claims are not "being liquidated or otherwise resolved by this Agreement" and that "[e]xcept as set forth in this Agreement, the Parties reserve all rights as to the" Finn Party Claims. *Id.* at 22. Paragraph 6 provides that the settling parties, including appellants, "shall bear all their own costs, expenses and attorneys' fees incurred in connection with the [state civil] Action, Adversary Proceeding, District Court Action and the Bankruptcy Cases, and the negotiation, preparation and application for Bankruptcy Court approval of this Agreement." *Id.* The Bankruptcy Court found that the principal and interest from the loans that formed the basis of the Claims were paid in full and that, as a result, the Finn Party Claims were only unsatisfied as to attorney fees and expenses. The question on appeal is whether Paragraph 2 means that the Finn Party Claims may include attorney fees and expenses or whether Paragraph 6

6

means they cannot.

They cannot, and I affirm the Bankruptcy Court's interpretation. As I explain, that interpretation gives each provision its plain meaning and ensures that both provisions work in concert. The appellants' interpretation, in contrast, would require ignoring or rewriting Paragraph 6 and lead to a strained reading of the Settlement Agreement as a whole.[4]

Paragraph 6 is clear and explicit: The appellants must "bear all their own costs, expenses and attorneys' fees in connection with," among other things, the Adversary Proceeding, District Court Action, and bankruptcy proceeding. *Id.* If Paragraph 2 did not exist, Paragraph 6 would end this appeal. The appellants could not reasonably argue that their claims for attorney fees and expenses survived Paragraph 6 standing alone.

The only issue, therefore, is whether Paragraph 2 contradicts Paragraph 6. There are two relevant sentences in Paragraph 2. The second sentence—the last in the paragraph—plainly does not clash with Paragraph 6. It states that the parties reserve all rights to the Claims "[e]xcept as set forth in this Agreement." *Id.* Paragraph 6 then "set[s] forth" that the appellants shall bear their own attorneys' fees in connection with the relevant proceedings.[5]

Appellants must, consequently, rely on the first sentence. That sentence gives them slightly more purchase because it does not include a similar "except for" clause; it states that, while the Finn Party Claims are subordinated to trade debt, they are not "liquidated" or "otherwise resolved" by the Settlement Agreement. For several reasons, however, this sentence cannot be read in the absolute way appellants urge and still cohere with the remainder of the Settlement Agreement. *See* CAL. CIV. CODE § 1641 ("The whole of a contract is to be taken together, so as to

---

[4] This interpretation applies regardless of whether the payment of attorney fees and expenses is based on the Loan Agreement, Grid Note, or Indemnification Agreement because all preceded the Settlement Agreement.

[5] In their Reply, the appellants argue that the phrase "except as set forth in this Agreement" means only "except as set forth in Paragraph 2." *See* Reply [Dkt. No. 11] 4. That reading contradicts both the provision's plain meaning and the consistent usage of "agreement" across the Settlement Agreement. That interpretation would also undermine the appellants' own case because the other sentence they rely on states that the Finn Party Claims are not being liquidated or resolved "by this Agreement." Under the appellants' new interpretation, either these two consecutive sentences would have to use "agreement" very differently or that sentence would only mean that *Paragraph 2* did not liquidate the claims—leaving Paragraph 6 uncontradicted.

7

give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

*First*, when read in context, the purpose of the sentence is to clarify that the Finn Party Claims are not being treated in the same way as the other creditors' claims—that is, terminated in exchange for the settlement. The preceding paragraph states that the other settling parties' claims are being withdrawn with prejudice. Settlement Agreement at 22. Paragraph 2 then states that the Finn Party Claims are being subordinated. *Id.* Accordingly, the sentence at issue serves primarily to clarify that the Finn Party Claims are not being withdrawn or disallowed *as part of the Settlement Agreement* like the other parties' claims were.

*Second*, adopting appellants' reading would require distorting the plain meaning of Paragraph 6. *See Hartford*, 59 Cal. 4th at 288. Paragraph 6 explicitly states that the "Settling Creditors" shall bear their own fees and costs, not that the Settling Creditors *except for Finn and WR* shall do so. If the parties intended to depart so starkly from the plain meaning of Paragraph 6, they would not have done so in as subtle a way as a sentence that simply makes clear that the pending Claims were not being liquidated or resolved as consideration for the settlement. The Settlement Agreement, moreover, is careful to differentiate when it speaks about Finn and WR and when it speaks about the other creditors—which it consistently does as a group with the label "Former Employees." *See, e.g.*, Settlement Agreement at 21; *see also id.* at 22 (contrasting "Former Employee Claims" with "Finn Party Claims"). Indeed, it expressly defines "Settling Creditors" to mean "Finn, WR and the Former Employees." *Id.* at 21.[6] This consistent pattern indicates that, when Paragraph 6 says that the "Settling Creditors" must bear their own fees and expenses, it means it. *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 142 (2000) (explaining that words are presumptively used in the "same sense" throughout a contract). The appellants offer no explanation for why Paragraph 6 would not, on their interpretation, simply have said that the "Former Employees" shall bear their own fees and expenses.

*Third*, appellants' interpretation would require an unnatural reading of Paragraph 2. The

---

[6] The appellants argue in their Reply that "Paragraph 6 does not include any language referencing [Finn and WR's] Claims." Reply 3. But that paragraph states that all settling parties will bear their fees and costs arising from, among other things, the bankruptcy proceeding in which those claims were raised.

last sentence would not explicitly reserve all rights "except as provided" in the Settlement Agreement only for the sentence before it to stealthily preserve the right to collect attorney fees in violation of Paragraph 6. The Bankruptcy Court's interpretation, in contrast, does not require twisting the plain language of either provision.

The appellants have several responses. They argue that, under the Bankruptcy Court's interpretation, Paragraph 2 would mean nothing in practical terms because, at the time of settlement, the Finn Party Claims had been compensated except for attorney fees and expenses. Op. Br. 9–10. The appellants argue, in other words, that the Finn Party Claims were at that point only for attorney fees and expenses and that, as a result, the Settlement Agreement would be resolving them in practice. I disagree. The Settlement Agreement itself did not "liquidate[]" or "resolve[]" the claims in the way those words must be understood in context. The claims would not be withdrawn by the Settlement Agreement and were not being disallowed as consideration for settling. It is true that, by the time of the settlement, the asset sale had already given payments to Finn and WR on their loans and that the attorney fees and expenses were still outstanding. But that reality does not mean that the Settlement Agreement itself liquidated or resolved the claims— as it did for the other creditors' claims. To the contrary, the appellants would, for instance, still be able to enforce those claims if the principal or interest payments on them were inadequate. If the claims were liquidated or resolved as part of the agreement, the appellants would not be able to enforce them. At most, the Settlement Agreement means that the appellants could no longer request a specific type of compensation in their claims.

Next, the appellants argue that any inconsistency between the two paragraphs should be resolved in favor of their interpretation because, when provisions conflict, (1) the more specific takes precedence over the more general and (2) the earlier takes precedence over the later. Op. Br. 9–10 (citing *Hobson v. Mut. Ben. Health & Acc. Ass'n*, 99 Cal. App. 2d 330, 335 (1950)). Parenthetically, the authority they rely on for their specificity argument applies to statutory interpretation. *See* CAL. CODE CIV. P. § 1859. And it is not obvious that Paragraph 2 is the more specific. More importantly, the two paragraphs, properly construed, are entirely consistent. California law is clear that potentially contradictory contractual provisions should be "reconciled,

9

if possible, by such an interpretation as will give some effect to" both. CAL. CIV. CODE § 1652.

The appellants also assert that the Bankruptcy Court's Compromise Order contradicts this interpretation when it states that, "[c]onsistent with paragraph 2 of the Settlement Agreement, nothing in this order allows or disallows" the Claims. Op. Br. 10. As I explained above, the Bankruptcy Court made clear that its Compromise Order merely applied the Settlement Agreement without alteration. It did not allow or disallow any claims as part of the agreement.

In their Reply, the appellants argue for the first time that the Settlement Agreement's interpretation "really hinges on a single word: bear." Reply 3. They contend that Paragraph 6's use of the word "bear" instead of "waive," "withdraw," or "forego" supports their interpretation. *Id.* But they have pointed to no evidence that each party "bear[ing]" its own attorney fees means anything other than the ordinary meaning of that phrase in this context. *See, e.g.*, *Astrue v. Ratliff*, 560 U.S. 586, 591 (2010) (describing the "American Rule that each litigant bear his own attorney's fees") (internal alterations and quotations omitted). Moreover, they do not indicate what Paragraph 6 could plausibly mean if not that each party would pay for its own attorney fees and expenses in the named proceedings. They suggest it might mean that the Settlement Agreement merely put off disputes over fees and costs "for another day." *Id.* That is simply not what Paragraph 6 says.

The appellants' final argument—and the primary argument in their briefs—is that I should consider extrinsic evidence, namely three statements of the trustee related to the Settlement Agreement. *Id.* 7–8. The trustee stated in his notice about the Settlement Agreement that the Claims "are not being liquidated or otherwise resolved"; he said in a status conference statement that "[i]n light of still pending litigation in the District Court . . . it does not appear possible to liquidate the [Claims] until that litigation is resolved"; and he stated at a hearing that the Claims "are not being liquidated." *Id.* As an initial matter, the extrinsic evidence cannot alter the meaning of the contract because I have found that the contract is unambiguous. If I were to nonetheless consider the extrinsic evidence, it does not overcome the provisions' plain meaning. The first and third statements parrot the Settlement Agreement's terms, rather than adding anything to them. The second statement simply says that the trustee was not, at that time, asking

10

to liquidate the claims because separate litigation was pending.  It is not an admission that what the parties truly meant in the Settlement Agreement was that Paragraph 6 silently exempts Finn and WR.

## CONCLUSION

Accordingly, the Orders of the Bankruptcy Court in both appeals are AFFIRMED. Judgments shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 21, 2020



William H. Orrick
United States District Judge